**ORIGINAL**

1  SCHULER & BROWN
   JACK M. SCHULER, State Bar Number 90899
2  SAM D. EKIZIAN, State Bar Number 202454
   7100 Hayvenhurst Avenue, Suite 310
3  Van Nuys, California 91406
   Tel: (818) 756-0999/Fax: (818) 756-0998
4
5  Attorneys for P. Victor Gonzalez, Qui Tam Plaintiff,
   on Behalf of Himself, the United States of America,
6  and the State of California

7                                                                    FILE BY FAX

8              UNITED STATES DISTRICT COURT

9         FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11  **P. VICTOR GONZALEZ, QUI TAM**      Case No. CV05-8818 AHM
    **PLAINTIFF, ON BEHALF OF**          (FMOx)
12  **HIMSELF, THE UNITED STATES**
    **OF AMERICA, AND THE STATE**
13  **OF CALIFORNIA,**                   SECOND CORRECTED
                                         COMPLAINT FOR:
14                  Plaintiff,
                                             1) DAMAGES; AND
15  vs.                                      2) CIVIL PENALTY

16  **PLANNED PARENTHOOD OF**            (FALSE CLAIMS ACTION)
    **LOS ANGELES; PLANNED**
17  **PARENTHOOD SHASTA-**              [DEMAND FOR JURY TRIAL]
    **DIABLO; PLANNED**
18  **PARENTHOOD GOLDEN GATE;**
    **PLANNED PARENTHOOD MAR**
19  **MONTE; PLANNED**
    **PARENTHOOD RIVERSIDE AND**
20  **SAN DIEGO; PLANNED**
    **PARENTHOOD ORANGE AND**
21  **SAN BERNARDINO; PLANNED**
    **PARENTHOOD PASADENA;**
22  **PLANNED PARENTHOOD SANTA**
    **BARBARA, VENTURA AND SAN**
23  **LUIS OBISPO; PLANNED**
    **PARENTHOOD SIX RIVERS;**
24  **PLANNED PARENTHOOD**
    **AFFILIATES OF CALIFORNIA;**
25  **MARY JANE WAGLE; MARTHA**
    **SWILLER; KATHY KNEER;**
26  **LILLIAN SPITZ; and DOES 1**
    **through 10,**
27
                **Defendants.**
28

                                    1

**COMES NOW** P. Victor Gonzalez, Qui Tam Plaintiff, on behalf of himself, The United States of America and the State of California and alleges as follows:

## INTRODUCTION

Qui Tam Plaintiff/Relator P. Victor Gonzalez was employed as the Vice President of Finance & Administration with Planned Parenthood of Los Angeles (PPLA) between December 9, 2002 and March 9, 2004. His job duties required him to take initiative to ensure compliance with all financial rules and regulations governing the financial activities of the Defendants.

In the months preceding the termination of Mr. Gonzalez's employment with the defendants, he raised various serious financial concerns directly related to conduct violative of Federal and State statutory schemes by the defendants. These concerns about the illegal accounting, billing, and donations practices of Planned Parenthood were conveyed via writing, e-mails and orally to various Planned Parenthood personnel. The written concerns related directly to the qualifications of Planned Parenthood to remain qualified as a health care provider which could legally receive continued funding from governmental and other sources. Indeed, the response of the defendants was to terminate Relator's employment.

Reviews of these problems had been undertaken from time to time by Planned Parenthood, its affiliates, and a number of consultants. However, other than the memorialization of these concerns during various meetings, there was no effective action to stem these continuing patterns of illicit corporate misconduct. Mr. Gonzalez had led numerous

1   efforts in identifying and enumerating these considerable problems and
2   illicit activities, locating consultants, looking for viable solutions,
3   presenting these solutions to all necessary parties, and procuring the
4   employees to formulate the solutions.
5
6       Section 340B of the Public Health Service Act requires drug
7   manufacturers to provide outpatient drugs to eligible health care centers,
8   clinics, and hospitals (termed "covered entities") at a reduced price. The
9   340B price is a "ceiling price", meaning it is the highest price the covered
10  entity would have to pay for select outpatient and over-the-counter drugs
11  and minimum savings the manufacturer must provide. The entities,
12  including Planned Parenthood, which are eligible to receive federally
13  discounted drugs are subject to various state and federal regulatory
14  schemes dictating their ability to dispense and seek reimbursement for
15  these drugs. California and Federal law provided payment for drugs
16  obtained under Section 340B be based on acquisition cost.  As further
17  detailed below, Planned Parenthood violated these regulations and vastly
18  overbilled for reimbursements.
19
20      From late 2003 through the actual date of his termination, Mr.
21  Gonzalez had specifically complained about the following problems
22  which jeopardized PPLA's ability to continue receiving governmental
23  funding and monies and to maintain its continuing status as a nonprofit
24  organization. Mr. Gonzalez complained, went on record on this matter,
25  and, in an effort to address these serious issues, participated in numerous
26  phone calls with the defendants, including PPLA, the other Planned
27  Parenthood affiliates in California, and the Sacramento based PPAC
28  (political action committee).

1        The defendants had a practice of marking up medications (oral
2    contraceptives, nuvaRing etc.) bought under the "PHS 340B" discount
3    program. The effect of this was the defendants overcharging the Federal
4    Government, the State of California, and self-pay patients. For one of the
5    defendants, PPLA, this resulted in overcharging over $2,000,000 per
6    year. This has been going on for a number of years, and is prevalent with
7    the other California Planned Parenthood affiliates. As a result the
8    overcharging exceeds $10,000,000.00 per year. During his employment
9    with Planned Parenthood of Los Angeles, Mr. Gonzalez was requested by
10    PPLA to perform an assessment of the impact of these overbilling
11    practices, and the other many Planned Parenthood affiliates were asked to
12    do likewise. The result of this assessment report for PPLA revealed
13    approximately $2,144,313.17 in overbilling. This reflects the financial
14    impact for only one of many Planned Parenthood affiliates in California
15    and only for one year. A copy of the report is enclosed.

17        In early February 2004, the California Department of Health
18    Services Audit and Investigations Branch began an audit of all ten
19    Planned Parenthood Affiliates in California starting with the San Diego
20    Planned Parenthood affiliate. The final audit report was limited to the
21    San Diego Planned Parenthood affiliate. The audit found extensive and
22    illegal markups of medications/contraceptives procured through the
23    federal discount drug program under 38 U.S.C. Section 340B.
24    Specifically, for over one year the audit uncovered at least $5,213,545.92
25    of illegal billing at Planned Parenthood San Diego alone. The California
26    Department of Health Services chose to ignore these findings
27    notwithstanding the serious violations implicated thereby allowing the
28    illegal activity to continue unchecked.

Contrary to their national reputation as a prominent charity organization and as a health care provider for reproductive services, there is probable cause to believe Planned Parenthood's ten California affiliates have systematically engaged in fraudulent overbilling against government funded programs. Since 1997 the Planned Parenthood affiliates of California have bought drugs at discount prices and rather than selling the drugs to their indigent clientele at the required Acquisition Cost, they illegally marked-up the drugs and billed them to both clients and government sometimes at greater than 12 times the acquisition cost. The estimated illegal billing over six years, beginning in 1999, exceeds $180,000,000.00. This conservative figure only takes into account the illegal and unscrupulous billing practices of Defendants within the state of California.

## THE 340B PROGRAM

In 1992, through enactment of section 340B of the Public Health Service Act, 42 U.S.C. § 256b, Congress established the 340B Drug Discount Program (the "340B Program"). The purpose of the 340B Program was to reduce drug prices for community health centers, public hospitals, and others that provide healthcare to the homeless, the disabled, children, and the poor ("340B Providers").

To reduce prescription drug prices for 340B Providers, section 340B requires pharmaceutical manufactures to ensure that 340B Providers pay no more for any pharmaceutical product than any other public or private purchaser of that product. Congress intended the savings

achieved by requiring pharmaceutical manufacturers to give 340B Providers their best price to help "stretch Federal resources as far as possible, to reach more eligible patients and provide more comprehensive services." H.R. Rpt. 102-384, 102d Cong., 2d session, pt 2, at 12 (1992).

The 340B Program has become a critical mechanism for safety net organizations to serve the healthcare needs of the most needy in their communities. In calendar year 2003, over 10,500 eligible healthcare providers participated in the 340B Program and paid an estimated $3.4 billion for outpatient drugs.

The 340B Program is overseen by the Health Resources and Services Administration ("HRSA"). HRSA is an agency within the United States Department of Health and Human Services ("HHS"). The HRSA maintains programs and services that safeguard the health and well-being of millions of Americans. Each year, over 11 million mostly low-income and uninsured patients are treated in HSRA's health centers, and over 27 million women, infants, children, and adolescents are served in its maternal and child health programs.

Immediate responsibility for oversight of the 340B Program resides in HSRA's Pharmacy Affairs Branch ("PAB"). PAB administers the Pharmaceutical Pricing Agreement signed pursuant to section 340B by drug manufacturers who participate in the 340B Program, maintains an electronic database of 340B Providers, and assists in establishing affordable pharmacy services for new and expanding community health centers. The Centers for Medicare and Medicaid Services, another HHS

agency, also has responsibility for assistance with administration of the 340B Program.

## THE FALSE CLAIMS ACT

The False Claims Act ("FCA") provides, in pertinent part that:

(a) Any person who (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval; (2) knowingly makes, uses or causes to be made or used a false record or statement to get a false of fraudulent claim paid or approved by the Government;... or (7) knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government,... is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000 plus 3 times the amount of damages which the Government sustains because the act of the person...

(b) For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required. False Claims Act, 31 U.S.C. Section 3729

///

///

///

///

## JURISDICTION AND VENUE

1.  This action is brought under the False Claims Act ("FCA" or "Act"), 31 U.S.C. § 3729 et seq., by P. Victor Gonzalez ("Relator"), on behalf of the United States of America, under the qui tam provisions of the Act. The case also includes pendent state law claims for violations of the California False Claims Act ("State False Claims Act"), Gov. Code § 12650 et seq., and the California Insurance Frauds Prevention Act, Ins. Code § 1871.7 et seq., both of which permit interested persons to bring civil actions on behalf of the State of California.

2.  This Court has jurisdiction over this matter under 28 U.S.C. §§ 1331 and 28 U.S.C. § 1345, for the United States is a party to this matter and certain of the causes of action set forth herein are founded upon a law of the United States of America.

3.  Venue lies in this District pursuant to 28 U.S.C. § 1391(b) and 31 U.S.C. § 3732, for the defendants conduct business in this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

4.  Defendant PLANNED PARENTHOOD OF LOS ANGELES (PPLA) is a California nonprofit corporation that regularly conducts its business at 1920 Marengo Street, Los Angeles, California 90033-1317.

5.     Defendant PLANNED PARENTHOOD SHASTA-DIABLO is a California nonprofit corporation that regularly conducts its business at 2185 Pacheco Street, Concord, California 94520.

6.     Defendant PLANNED PARENTHOOD GOLDEN GATE is a California nonprofit corporation that regularly conducts its business at 2211 Palm Avenue, San Mateo, California 94403.

7.     Defendant PLANNED PARENTHOOD MAR MONTE is a California nonprofit corporation that regularly conducts its business at 1691 The Alameda, San Jose, California 95126.

8.     Defendant PLANNED PARENTHOOD RIVERSIDE AND SAN DIEGO is a California nonprofit corporation that regularly conducts its business at 1075 Camino Del Rio South, San Diego, California 92108.

9.     Defendant PLANNED PARENTHOOD ORANGE AND SAN BERNARDINO is a California nonprofit corporation that regularly conducts its business at 700 S. Tustin Street, Orange, California 92866.

10.    Defendant PLANNED PARENTHOOD PASADENA is a California nonprofit corporation that regularly conducts its business at 1045 N. Lake Avenue, Pasadena, California 91104.

11.    Defendant PLANNED PARENTHOOD SANTA BARBARA, VENTURA AND SAN LUIS OBISPO is a California nonprofit corporation that regularly conducts its business at 518 Garden Street, Santa Barbara, California 93101.

12. Defendant PLANNED PARENTHOOD SIX RIVERS is a California nonprofit corporation that regularly conducts its business at 2316 Harrison Avenue, Eureka, California 95501.

13. Defendant PLANNED PARENTHOOD AFFILIATES OF CALIFORNIA (PPAC) is a California nonprofit corporation that regularly conducts its business at 555 Capitol Mal, Suite 510, Sacramento, California 95814.

14. Defendant MARY JANE WAGLE was at all times an individual and an employee of PPLA in the capacity of chief executive officer (CEO).

15. Defendant MARTHA SWILLER was at all times an individual and an employee of PPLA formerly in the capacity of chief executive officer (CEO) and currently Vice President.

16. Defendant KATHY KNEER was at all times an individual and an employee of PPAC in the capacity of President.

17. Defendant LILLIAN SPITZ was at all times an individual and an employee of PPAC.

18. Defendants Does 1 through 10 are PLANNED PARENTHOOD (PP) districts, and individual PLANNED PARENTHOOD affiliates/clinics; employees and agents of PLANNED PARENTHOOD districts and individual PLANNED PARENTHOOD affiliates/clinics; and individuals, persons, associations and organizations, whose identity and capacity are presently unknown to Relator. Relator is informed and believes and thereon alleges that Defendants Does 1 through 10 are legally responsible

1   and liable for the acts, omissions, injuries, damages and false claims
2   hereinafter set forth and that each of said Defendants legally and
3   proximately caused the injuries and damages herein alleged by reason of
4   the conduct hereinafter set forth, or by reason of direct or imputed
5   negligence or vicarious fault or breach of duty arising out of the matters
6   herein alleged.  Relator will seek leave to amend this Complaint to set
7   forth the true names, capacities and identities of Does 1 through 10, when
8   same are ascertained.

9

10  19.  Relator, P. Victor Gonzalez is an individual residing/domiciled in San
11       Diego County, State of California. Relator was employed as the Vice
12       President of Finance & Administration with Defendant PPLA between
13       December 9, 2002 and March 9, 2004.

14

15  20.  This action by Relator is not based upon a "public disclosure" as defined
16       by 31 U.S.C. § 3730(e)(4)(A), and even if there were a public disclosure
17       in this case, Relator would qualify as an "original source" as defined by
18       31 U.S.C. § 3730(e)(4)(A).  P. Victor Gonzalez relayed the information
19       contained herein to the DHS services auditor by e-mail correspondence,
20       and further relayed the information contained herein to the Department of
21       Justice, the Health and Human Services Office of the Inspector General,
22       the Federal Bureau of Investigations, and the Los Angeles County
23       District Attorney as the "original source" of this information.  (Attached
24       hereto as Exhibit 1 are true and correct copies of  correspondence
25       directed to the aforementioned Entities/Individuals)

26

27  21.  Relator is informed and believes and thereon alleges that at all times
28       relevant, some or all of the Defendants, including each and every Doe

1    Defendant, were agents and/or employees of some or all of the remaining
2    Defendants, and in doing each of the things alleged hereinafter were
3    acting within the course and scope of said agency and/or employment.
4

5  22.   Relator is informed and believes and thereon alleges that at all times
6        relevant, Defendants, and each of them, including each and every Doe
7        Defendant, authorized and ratified some or all of the acts and omissions
8        alleged hereinafter.
9

10  23.   Relator is informed and believes and thereon alleges that at all times
11        relevant, Defendants, and each of them, including each and every Doe
12        Defendant, conspired with some or all of the remaining Defendants
13        herein, including Doe Defendants, to commit the acts and omissions
14        hereinafter alleged, and are therefore jointly and severally liable pursuant
15        to Federal and State law for some or all of the acts and omissions
16        hereafter alleged, and are liable for the injuries, damages and penalties
17        hereinafter alleged.
18

19                    **GENERAL ALLEGATIONS**
20

21  24.   At all times relevant to this Complaint, the Defendants provided care and
22        prescription medications including contraceptives to patients at one or
23        more of the facilities referenced above. Defendants receive funding from
24        state and federal governments, from private donors, certain insurance
25        plans, and from fees received from patients.
26

27  25.   At all times relevant to this Complaint, Defendants were authorized
28        providers of services to patients insured by Medicare, Medicaid, the

Family Planning, Access, Care and Treatment (FPACT) program under the authority of section 1115(a)(2) of the Social Security Act, and other federally funded programs. All of these federally funded programs are collectively referred to hereinafter as "Federal Insurers." Defendants also received benefits pursuant to Section 340B of the Public Health Service Act.

26.   In 1992, Section 340B of the Public Health Service Act was enacted. Section 340B requires drug manufacturers to provide outpatient drugs to eligible health care centers, clinics, and hospitals (termed "covered entities") at a reduced price. The 340B price is a "ceiling price", meaning it is the highest price the covered entity would have to pay for select outpatient and over-the-counter drugs and minimum savings the manufacturer must provide. The 340B price is at least as low as the price that state Medicaid agencies currently pay.

27.   Entities covered under Section 340B must maintain accurate records documenting that the entities are not double dipping or reselling, or transferring drugs to persons who are not patients of the entity. An entity must present records in the case of an audit by the manufacturer or the federal government.

28.   Relator was employed as the Vice President of Finance & Administration with Defendant PPLA between December 9, 2002 and March 9, 2004. His job duties statutorily required him to report violations to the various State and Federal Agencies and regulators, and take initiative to ensure compliance with all financial rules and regulations governing the business activities of the Defendant.

29. In the months preceding Relator's employment termination, he had raised various serious financial concerns directly related to conduct violative of Federal and State statutory schemes. These concerns about the illegal accounting, billing, and donations practices of the Defendant were conveyed via writing, e-mails or orally. The written concerns related directly to the qualifications of PPLA to remain qualified as a health care provider and to receive continued funding from governmental and other sources. (Attached hereto as exhibit 2 are true and correct copies of e-mails/correspondence regarding Relator's concerns)

30. A review of these problems had been undertaken from time to time by PPLA, its affiliates, a number of consultants, and internal reviews conducted by PPLA employees and Board members. Relator had led the effort in identifying and enumerating these considerable problems and illicit activities, locating consultants, looking for viable solutions, presenting these solutions to all necessary parties, and procuring the employees to formulate the solutions. Attached hereto is a true and correct copy of the original draft report that mentions the various problems that existed at PPLA during Plaintiff's employment. (Please See Exhibit 3). This report was subsequently altered by Mary Jane Wagle. (Please See Exhibit 4).

31. From late 2003 through the actual date of his employment termination, Plaintiff had specifically complained about the following problems which jeopardized the defendants' ability to continue receiving governmental funding and monies and to maintain continuing status as nonprofit organizations. Many of these complaints are mentioned in Exhibit 5, a

1    true and correct copy of a memorandum provided to upper management

2    at Planned Parenthood.

3

4    32.   PPLA had a practice of marking up medications (oral contraceptives,

5          nuvaRing etc) bought under the "PHS 340B" discount program).  The

6          effect of this at PPLA is overcharging the Federal Government, the State

7          of California, and self-pay patients approximately $2,000.000.00 per

8          year. This has been going on for a number of years, and is prevalent with

9          all the other California PP affiliates. As a result the overcharging exceeds

10         $10,000,000.00 per year.

11

12   33.   Relator complained, went on record on this matter, and, in an effort to

13         address these serious issues, participated in numerous phone calls with

14         both PPLA and the Sacramento based PPAC (political action committee).

15

16   34.   In early February 2004, The California Department of Health Services

17         began an audit of all ten Planned Parenthood affiliates in California

18         beginning with the San Diego Planned Parenthood affiliate.  The final

19         audit report was limited to the San Diego Planned Parenthood affiliate.

20         The   audit   found   extensive   and   illegal   markups   of

21         medications/contraceptives procured through the federal discount drug

22         program under 38 U.S.C. section 340B. Specifically, the audit uncovered

23         at least $5,213,545.92 of illegal billing at Planned Parenthood San Diego

24         alone.  (Attached hereto as Exhibit 6 is a true and correct copy of the

25         audit and letter detailing the illegal activity.)

26

27   35.   The California Department of Health Services, following intervention by

28         Defendants, chose to ignore these findings notwithstanding the serious

1    violations implicated allowing for this illegal activity to continue
2    unchecked. (Please See Exhibit 7.)

3

4   36.   There are nine separate Planned Parenthood affiliates in California each
5         of which also engaged in the same unscrupulous billing practices. These
6         Nine affiliates are part of a nationwide organization consisting of 123
7         affiliates forming the Planned Parenthood Federation of America. The
8         estimated illegal billing of the defendants over six years, beginning in
9         1999, exceeds $180,000,000.00. This conservative figure only takes into
10        account the illegal and unscrupulous billing practices of Defendants
11        within the state of California.

12

13  37.   The actions of PPLA and other Defendants resulted in violations of the
14        public policy set forth in or furthered by OMB Circular A-133, FPACT
15        Written Regulations, 61 CFR 4359, Section 340B of Public Law 102-585
16        (Veterans Health Care Act of 1992), regulations of the Office of
17        Pharmacy Affairs, and US Department of Health & Human Services
18        regulations, California Government Code §§ 12650-12655, 31 U.S.C. §
19        3729 et seq., and various other statutes.

20

21  38.   While applicable regulations are designed to protect the most vulnerable
22        of patient populations by reducing the costs of drugs, a fundamental
23        public policy, PPLA and other Defendants have instead undercut this
24        policy by overcharging, creating excess inventory, and other acts
25        designed to generate revenue for themselves at the expense of the public.

26

27  39.   Relator additionally complained of filing, providing doctored and rosy
28        financial projections, and suppression of Single Audit Report (OMB 133)

findings to California Health Facilities Financing Authority (CHFFA) with the intention of inducing CHFFA to approve a loan of $400,000 to save the South Los Angeles PPLA clinic.

40.   PPLA intentionally did not disclose the Single Audit findings and material weaknesses to CHFFA or other regulatory agencies, even though it pointed out failures in management and financial controls. This Single Audit report covered precisely the period under review and being questioned by CHFFA officials. In fact the Single Audit report's findings likely disqualified PPLA from many other government programs.

41.   PPLA also sought to hide the losses and the funding freeze from the California Family Health Council (CHFC)—over half a million dollars in the same 2002 period. Mary Jane Wagle sent an email advising Relator to be deliberately vague in these disclosures. The chairman of the PPLA finance committee was copied in this email. True and correct copies of emails evidencing the scheme to suppress and camouflage as well as continue the aforementioned illegal activity are attached as Exhibit 8.

42.   Rather than remedying the multiple serious problems identified by Relator, Defendants instead terminated his employment.

43.   At and before the time of Relator's termination it was the intent of PPLA to suppress information relating to illegal billing from the government, potential auditors, and members of the public.   (See Exhibit 9). Moreover, Defendants knew that false and misleading information had been provided to the State of California, private funding sources, and the

1  federal government, or that billing codes used by PPLA were creating

2  problems that would affect funding. (See Exhibit 9).

3

4  44.  The violations of normally accepted financial practices, rules and

5  regulations by Defendants placed the State of California, the United

6  States, and private grant sources at risk of serious financial loss.

7  Defendants disregarded these policies by suppressing Relator's findings,

8  by terminating his employment in order to further prevent the lawfully

9  required disclosure of damaging facts known by Relator and Defendants,

10  and by intentionally failing to disclose the facts discovered by Relator to

11  funding sources such as the State of California, and the federal

12  government by and through its agents within the State of California.

13

14  45.  Relator's negative findings <u>and reports to management</u> were known to

15  Defendants and their leadership throughout the latter part of 2003 and up

16  until the time that Relator was terminated in March 2004.

17

18  46.  Defendants' conduct poured over into misrepresentation that was made to

19  private donors and governmental agencies as well during and prior to

20  2004 in violation of California Business & Professions Code § 17500, et

21  seq., and California Civil Code § 1760, et seq. (California Consumer

22  Legal Remedies Act), which prohibit this type of deception.  Moreover,

23  Defendants had already agreed not to engage in certain violations of

24  public policy designed to protect taxpayers from fraud and abuse.

25

26  47.  Relator is informed and believes that at all times relevant to this

27  Complaint, Defendants submitted, or caused to be submitted, claims for

28  reimbursement for prescription medications/contraceptives and services

1    provided to Medicare, Medicaid, and FPACT patients to the Health Care

2    Financing Administration ("HCFA"), an agency of the Department of

3    Health and Human Services ("HHS"), for payment.

4

5   48.   At all times relevant to this Complaint, Defendants were authorized

6    providers of services to patients insured by MediCal and other state

7    funded programs. All of these state funded programs are collectively

8    referred to hereinafter as "State Insurers."

9

10   49.   Relator is informed and believes and thereon alleges that, at all times

11    relevant to this Complaint, Defendants submitted, or caused to be

12    submitted, claims for reimbursement for services provided to individuals

13    insured by MediCal to Electronic Data Systems, Inc., which then

14    forwarded those claims to the Department of Health Services for ultimate

15    payment by the Controller of the State of California. Relator is informed

16    and believes and thereon alleges that, at all times relevant to this

17    Complaint, the State of California received at least 50% of its funding

18    from HHS for payments made on behalf of MediCal patients.

19

20   50.   Between at least 1999 and the present, Defendants have knowingly

21    engaged in a series of fraudulent billing practices that have damaged

22    State and Federal Insurers. Defendants have been enriched by these

23    practices, directly or indirectly, in the form of excessive payments for the

24    services provided.

25

26   51.   At all times relevant to this Complaint, defendants billed, or caused to be

27    billed, State and Fiscal Intermediaries who act on behalf of the State and

28    the Federal Government, for Evaluation and Management ("E&M")

services, drugs and medications provided to the patient and clientele population of Defendant, and other services as prescribed in the FPACT manual and guidelines controlling and emanating from the various Waiver programs and demonstration projects which funded these activities for Defendant and Does over the years as the law was interpreted and applied to all services performed by the health care providers on behalf of patients. The amount paid for such services depended variously on the Current Procedural Terminology ("CPT") code assigned by defendants for the services performed, as well as the "local and state codes" which FPACT enacted from time to time. The CPT coding system provides for the assignment of different codes by healthcare providers depending on the type of services provided as well as the drug and medications, the contraceptive pills, devices, and other drugs and materials being dispensed as a result of a physician visits or otherwise as "social" or community services visits as these were variously designated from time to time by Defendant and Does.

52.   One of the practices of Defendants was the knowing and systematic assignment of codes allowing them to charge at other than cost for the services, drugs, and medications being dispensed and made available to patients and clientele. For example, the coding may have been designated as "supplies" from time to time and charged to the State, and by derivation to the Federal programs, at the marked up prices and not at the required cost of such services, drugs, and medications.

53.   As a result of this mechanism of coding and perpetuating of historical flat fees charged for such medications, services, and drugs, in many instances, Defendants practices resulted in the equivalent of "upcoding" the acuity,

1    economic, and time value of their services or prescriptions within the
2    range applicable to the relevant type of service or prescription.

3

4   54.   In many cases, the code assigned for a service or prescription was not
5         even selected by a healthcare provider under whose name the service was
6         billed or who provided the prescription medication; the charge was
7         instead assigned by a non-healthcare provider staff member. The code
8         was also often gang-assigned mechanically by a system, or "hidden from
9         view" by use of "spoofing or cover coding" resulting in various tables,
10        entries and devices inside the system being used to elevate miscoding and
11        price-gouging and thereby creating an artifice of accepted and established
12        methods of charging and coding. This artifice was comprised of billing
13        entries correlating to historically charged amounts for the corresponding
14        medications or services which were never checked by State DHS audits
15        or otherwise validated. This was widely known to the Defendants and
16        was the subject of emails with PPAC.

17

18  55.   The alleged justification for this misconduct, as evident in the subject
19        emails, was that the entire system was compensating for the shortfall in
20        the basic visits charge that the State and by derivation the Federal
21        government allowed. Complying with proper billing practices would
22        have meant that Defendants' entire healthcare delivery system would
23        have had to be significantly reshaped adopting more austere budgets and
24        forestalling its expansion. It follows that complying with proper billing
25        practices was not in Defendants' best interests and therefore was
26        disregarded.

27

28

56.   A report of PPLA's billing practices was performed on or about January 2004. (See Exhibit 2)   The report, which focused on the provision of contraceptives and subsequent reimbursements, showed that the extent of defendants' fraud was pervasive. The report indicates that defendants routinely engaged in numerous other improper billing practices and collected substantially higher reimbursement amounts for these contraceptives than if they had billed correctly.

57.   The internally prepared study, responsive to a call to action by PPAC, was based on PPLA records from 2002 through 2003.  It represented a 12 month projection and it is representative of the general billing practices and exorbitant overbilling by Defendants. Based on his experience working at PPLA, Relator is informed and believes that other defendants were at least equally aggressive, if not more so, when billing on behalf of patients insured by State and Federal Insurers.

58.   Relator is further informed and believes that the Defendants' aggressive billing practices with State and Federal Insurers were in place from as early as 1999 and persisted consistently thereafter. Previous auditing had revealed similar patterns of overbilling on the part of Defendants dating back to 1999 and earlier, yet the problems were not corrected by defendants.

59.   Defendants were made aware of the various aforementioned improprieties. Nonetheless, Relator is informed and believes that Defendants have not reimbursed State or Federal Insurers for the amounts that have been improperly and falsely billed.  Relator is further informed and believes that Defendants continued to engage in the unlawful

1    practices described herein even after the problems were brought to their

2    attention and the San Diego DHS audit was completed.

3

4                                    **COUNT I**

5    (Submission of False Claims in Violation of 31 U.S.C, § 3729(a)(1)) (All

6                                    Defendants)

7

8    60.   Relator realleges and incorporates paragraphs 1 through 47 and all

9          preceding paragraphs of this Complaint as if fully set forth herein.

10

11   61.   Between at least 1999 and the present, Defendants have knowingly

12         submitted, or caused to be submitted, claims for payment by Federal

13         Insurers, FPACT, and MediCal for higher levels of Evaluation and

14         Management (E&M) services than were actually provided to patients as

15         well as reimbursements for medications/contraceptives in excess of

16         allowable limits.

17

18   62.   Relator is informed and believes that, between at least 1999 and the

19         present, Defendants have knowingly overbilled Federal Insurers, FPACT,

20         and MediCal.

21

22   63.   Defendants thus knowingly caused the submission of false claims to the

23         United States in violation of the False Claims Act. The exact amount of

24         the United States' harm has not yet been determined. The precise amount

25         of damage caused by defendants will be ascertained at trial.

26

27   ///

28   ///

# COUNT II

(Use of False Statements or Records or Statements in Violation of 31 U.S.C. § 3729(a)(2)) (All Defendants)

64.   Relator realleges and incorporates paragraphs 1 through 47 and all preceding paragraphs of this Complaint as if fully set forth herein.

65.   Between at least 1999 and the present, Defendants knowingly prepared or caused to be prepared false records and/or statements in connection with the upcoding of the E&M services provided by defendants. Incorrect CPT codes and modifier codes were assigned to patients' records that were knowingly false.

66.   Relator is informed and believes that, between at least 1999 and the present, Defendants also knowingly prepared false records and/or statements in connection with billing for medications/contraceptives. Defendants frequently assigned incorrect CPT codes.

67.   Defendants thus knowingly used false records or statements to get false or fraudulent claims paid or approved by the United States in violation of the False Claims Act. The exact amount of the United States' harm has not yet been determined. The precise amount of damage caused by defendants will be ascertained at trial.

///
///
///
///
///

## COUNT III

(Conspiracy to Get False Claims Paid - 31 U.S.C. § 3729(a)(3))

(All Defendants)

68. Relator realleges and incorporates paragraphs 1 through 47 and all preceding paragraphs of this Complaint as if fully set forth herein.

69. Between at least 1999 and the present, Defendants agreed on the submission of claims that were known by each to be false by reason of the practices described herein.

70. Defendants thus knowingly conspired to defraud the United States by getting false claims paid in violation of the False Claims Act. The exact amount of the United States' harm has not yet been determined. The precise amount of damage caused by Defendants will be ascertained at trial.

## COUNT IV

(Reverse False Claims - 31 U.S.C. § 3729(a)(7)) (All Defendants)

71. Relator realleges and incorporates paragraphs 1 through 47 and all preceding paragraphs of this Complaint as if fully set forth herein.

72. By engaging in the conduct described above, Defendants avoided or reduced obligations owed to reimburse funds to Federal Insurers.

73. When seeking additional payments from Federal Insurers following the improper receipt of funds described above, Defendants knowingly

1   concealed information concerning the offsetting reimbursements that
2   were owed to the Government and thus reduced defendants' obligation to
3   Federal Insurers. Further, Relator is informed and believes that by
4   knowingly concealing and/or failing to disclose the overpayments during
5   federal government audits or reviews of their billing, Defendants avoided
6   making payments to Federal Insurers to refund monies overpaid to them.
7
8   74.   Defendants thus knowingly used false records or statements to reduce or
9         avoid an obligation to pay the United States in violation of the False
10        Claims Act. The exact amount of the United States' harm has not yet been
11        determined. The precise amount of damage caused by Defendants will be
12        ascertained at trial.
13

## COUNT V

(Conspiracy to defraud the Government with respect to claims in Violation of
18 USC Section 286) (All Defendants)

18  75.   Relator realleges and incorporates paragraphs 1 through 47 and all
19        preceding paragraphs of this Complaint as if fully set forth herein.
20
21  76.   Between at least 1999 and the present, Defendants agreed on the
22        submission of claims for services, which were known by each to be false
23        by reason of the practices described herein, to Federal Insurers.
24
25  77.   Defendants thus knowingly conspired to defraud the State of California
26        and the United States by getting false claims paid in violation of the False
27        Claims Act and the within statute. Relator is informed and believes and
28        thereon alleges that the United States was damaged by Defendants in an

1    amount as yet unknown. The exact amount of the United States' harm has
2    not yet been determined. The precise amount of damage caused by
3    Defendants will be ascertained at trial.

4

5                              **COUNT VI**

6    (False, fictitious or fraudulent claims in Violation of 18 USC Section 287) (All
7                               Defendants)

8

9    78.   Relator realleges and incorporates paragraphs 1 through 47 and all
10         preceding paragraphs of this Complaint as if fully set forth herein.

11

12   79.   Between at least 1999 and the present, Defendants have knowingly
13         submitted, or caused to be submitted, claims for payment by Federal
14         Insurers, FPACT, and MediCal for higher levels of Evaluation and
15         Management (E&M) services than were actually provided to patients as
16         well as reimbursements for medications/contraceptives in excess of
17         allowable limits.

18

19   80.   Relator is informed and believes that, between at least 1999 and the
20         present, Defendants have knowingly overbilled Federal Insurers, FPACT,
21         and MediCal.

22

23   81.   Defendants thus knowingly caused the submission of false claims to the
24         United States in violation of the False Claims Act and the within statute.
25         Relator is informed and believes and thereon alleges that the United
26         States was damaged by Defendants in an amount as yet unknown. The
27         exact amount of the United States' harm has not yet been determined. The

28

1    precise amount of damage caused by Defendants will be ascertained at

2    trial.

3

4                              **COUNT VII**

5    (Conspiracy to commit offense or to defraud United States in Violation of 18

6                          USC Section 371) (All Defendants)

7

8    82.   Relator realleges and incorporates paragraphs 1 through 47 and all

9          preceding paragraphs of this Complaint as if fully set forth herein.

10

11   83.   Between at least 1999 and the present, Defendants agreed on the

12         submission of claims for services, which were known by each to be false

13         by reason of the practices described herein, to Federal Insurers.

14

15   84.   Defendants thus knowingly conspired to defraud the State of California

16         and the United States by getting false claims paid in violation of the False

17         Claims Act and the within statute. Relator is informed and believes and

18         thereon alleges that the United States was damaged by Defendants in an

19         amount as yet unknown. The exact amount of the United States' harm has

20         not yet been determined. The precise amount of damage caused by

21         Defendants will be ascertained at trial.

22

23                             **COUNT VIII**

24   (Theft or embezzlement in connection with health care in Violation of 18 USC

25                          Section 669) (All Defendants)

26

27   85.   Relator realleges and incorporates paragraphs 1 through 47 and all

28         preceding paragraphs of this Complaint as if fully set forth herein.

86. Between at least 1999 and the present, Defendants willfully and knowingly misapplied funds of a health care benefit program.

87. Defendants thus knowingly misapplied and converted funds of the United States in violation of the False Claims Act and the within statute. Relator is informed and believes and thereon alleges that the United States was damaged by Defendants in an amount as yet unknown. The exact amount of the United States' harm has not yet been determined. The precise amount of damage caused by Defendants will be ascertained at trial.

## COUNT IX

### (Major fraud against the United States in Violation of 18 USC Section 1031)

### (All Defendants)

88. Relator realleges and incorporates paragraphs 1 through 47 and all preceding paragraphs of this Complaint as if fully set forth herein.

89. Between at least 1999 and the present, Defendants willfully and knowingly, by means of false or fraudulent pretenses, obtained funds and defrauded the United States.

90. Defendants thus knowingly misapplied and converted funds of the United States in violation of the False Claims Act and the within statute. Relator is informed and believes and thereon alleges that the United States was damaged by Defendants in an amount as yet unknown. The exact amount of the United States' harm has not yet been determined. The precise amount of damage caused by Defendants will be ascertained at trial.

## COUNT X

(False statements relating to health care matters in Violation of 18 USC Section 1035) (All Defendants)

91.    Relator realleges and incorporates paragraphs 1 through 47 and all preceding paragraphs of this Complaint as if fully set forth herein.

92.    Between at least 1999 and the present, Defendants made and used materially false writings and documents knowing the same to contain materially false, fictitious, or fraudulent statements and/or entries, in connection with the delivery of or payment for health care benefits.

93.    In so doing, Relator is informed and believes that, between at least 1999 and the present, Defendants have knowingly overbilled Federal Insurers, FPACT, and MediCal.

94.    Defendants thus knowingly caused the submission of false claims to the United States in violation of the False Claims Act and the within statute. Relator is informed and believes and thereon alleges that the United States was damaged by Defendants in an amount as yet unknown. The exact amount of the United States' harm has not yet been determined. The precise amount of damage caused by Defendants will be ascertained at trial.

///
///
///
///
///

## COUNT XI

(Submission of False Claims - Violation of California Government Code
Section 12651(a)(1)) (All Defendants)

95.  Relator realleges and incorporates paragraphs 1 through 47 and all preceding paragraphs of this Complaint as if fully set forth herein.

96.  Between at least 1999 and the present, Defendants have knowingly submitted, or caused to be submitted, claims for payment by State Insurers (including MediCal) for higher levels of E&M services and other types of services, medications, and drugs, as variously coded from time to time, than were actually provided to patients.

97.  Relator is informed and believes that, between at least 1999 and the present, Defendants have knowingly over-billed State Insurers (including MediCal) for medications/contraceptives.

98.  Defendants thus knowingly caused the submission of false claims to the State of California in violation of the California False Claims Act. The exact amount of the State of California's harm has not yet been determined. Relator is informed and believes and thereon alleges that the State of California was damaged by Defendants in an amount as yet unknown. The precise amount of damage caused by Defendants will be ascertained at trial.

///
///
///
///

## COUNT XII

(Use of False Statements or Records - California Government Code Section 12651(a)(2)) (All Defendants)

99.  Relator realleges and incorporates paragraphs 1 through 47 and all preceding paragraphs of this Complaint as if fully set forth herein.

100.  Between at least 1999 and the present, Defendants knowingly prepared or caused to be prepared false records and/or statements in connection with incorrect CPT codes and modifiers which were assigned to patients' records that were knowingly false, misleading in their method of assignment, or deliberately concealed and billed as generalized supplies.

101.  Relator is informed and believes that, between at least 1999 and the present, defendants also knowingly prepared false records and/or statements in connection with billing for prescription medications/contraceptives. Defendants frequently assigned incorrect CPT codes and modifiers which were assigned to patients' records that were knowingly false, misleading in their method of assignment, or deliberately concealed and billed as generalized supplies. In an effort to conceal this pattern of coding and miscoding, Defendants' Chief Operations Officer, Steven Emmert, caused the OSHPD report to be inflated for the calendar year 2002.

102.  Defendants thus knowingly used false records or statements to get false or fraudulent claims paid or approved by the State of California in violation of the California False Claims Act. The exact amount of the

1   State of California's harm has not yet been determined. Relator is

2   informed and believes and thereon alleges that the State of California was

3   damaged by Defendants in an amount as yet unknown. The precise

4   amount of damage caused by Defendants will be ascertained at trial.

6   **COUNT XIII**

7   (Inadvertent Submission of False Claims - California Government Code Section

8   12651(a)(8)) (All Defendants)

10   103.   Relator realleges and incorporates paragraphs 1 through 47 and all

11   preceding paragraphs of this Complaint as if fully set forth herein.

13   104.   By virtue of the acts and omission described above, Defendants are the

14   beneficiary of inadvertent submissions of false claims to the State of

15   California and failed to disclose the false claims to the State of California

16   within a reasonable time after their subsequent discovery of the falsity of

17   the claims.

19   105.   The exact amount of the State of California's harm has not yet been

20   determined. Relator is informed and believes and thereon alleges that the

21   State of California was damaged by Defendants in an amount as yet

22   unknown. The precise amount of damage caused by Defendants will be

23   ascertained at trial.

24   ///

25   ///

26   ///

27   ///

28   //

**COUNT XIIII**

(Conspiracy to Submit False Claims - Government Code Section 12651(a)(3))

(All Defendants)

106. Relator realleges and incorporates paragraphs 1 through 47 and all preceding paragraphs of this Complaint as if fully set forth herein.

107. Between at least 1999 and the present, Defendants agreed on the submission of claims for services, which were known by each to be false by reason of the practices described herein, to Federal Insurers.

108. Defendants thus knowingly conspired to defraud the State of California by getting false claims paid in violation of the State False Claims Act. The exact amount of the State's harm has not yet been determined. Relator is informed and believes and thereon alleges that the State of California was damaged by Defendants in an amount as yet unknown. The precise amount of damage caused by Defendants will be ascertained at trial.

**COUNT XV**

(Submission of False Claims in Violation of Penal Code § 550(a)(6)/ Insurance Code § 1871.7) (All Defendants)

109. Relator realleges and incorporates paragraphs 1 through 47 and all preceding paragraphs of this Complaint as if fully set forth herein.

110. Between at least 1999 and the present, Defendants have knowingly submitted, caused to be submitted, and conspired to submit, claims for payment the FPACT program for higher levels of reimbursement than

1    Defendants were actually provided to for provision of prescription

2    Medications/contraceptives to patients. Relator is informed and believes

3    that, between at least 1999 and the present, Defendants have knowingly

4    submitted, caused to be submitted, and conspired to submit, inflated bills.

5

6    111. Defendants thus knowingly caused the submission of false claims to the

7    State Compensation Fund in violation of Penal Code §§ 550(a)(6) and

8    Insurance Code § 1871.7(b). The exact amount of harm to the State has

9    not yet been determined. The precise amount of damage caused by

10    Defendants will be ascertained at trial.

11

12                          **COUNT XVI**

13    (Use of False Statements or Records in Violation of California Penal Code §§

14    550(a)(5), 550(b)(1)-(2)/Insurance Code § 1871.7(b)) (All Defendants)

15

16    112. Relator realleges and incorporates paragraphs 1 through 47 and all

17    preceding paragraphs of this Complaint as if fully set forth herein.

18

19    113. Defendants knowingly prepared, caused to be prepared, and conspired to

20    prepare, false records and/or statements in connection with their coding

21    of services and provision of prescription medications/contraceptives.

22    Specifically, CPT codes and modifiers which were assigned to patients'

23    records that were knowingly false, misleading in their method of

24    assignment, or deliberately concealed and billed as generalized supplies.

25

26    114. Defendants thus knowingly used false records or statements to get false

27    or fraudulent claims paid or approved by the State in violation of Penal

28    Code §§ 550(a)(5), 550(b)(1)-(2), and Insurance Code § 1871.7(b). The

exact amount of harm to the State has not yet been determined. The precise amount of damage caused by Defendants will be ascertained at trial.

## COUNT XVII

(Concealing Overbilling in Violation of Penal Code Section 550(b)(3)/ Insurance Code § 1871.7(b)) (All Defendants)

115. Relator realleges and incorporates paragraphs 1 through 47 and all preceding paragraphs of this Complaint as if fully set forth herein.

116. Defendants have concealed and knowingly failed to disclose the fact that they have overbilled the State for services rendered and provision of prescription medications/contraceptives, despite having had audits performed and other information that make the extent of the fraud manifest to Defendants.

117. The exact amount of harm to the State Compensation Fund has not yet been determined. ). The exact amount of harm to the State has not yet been determined. The precise amount of damage caused by Defendants will be ascertained at trial.

## COUNT XVIII

(Unjust Enrichment) (All Defendants)

118. Relator realleges and incorporates paragraphs 1 through 47 and all preceding paragraphs of this Complaint as if fully set forth herein.

119. This is a claim for the recovery of monies and the reasonable value of benefits such as improper and excessive reimbursement by which Defendants have been unjustly enriched through the fraud committed against the United States and the State of California.

120. By directly or indirectly obtaining government funds and benefits to which they were not entitled Defendants were unjustly enriched and are liable to account and pay such amounts or the proceeds therefrom. The exact amount of harm to United States and the State of California has not yet been determined. The precise amount of damage caused by Defendants will be ascertained at trial.

## COUNT XIX

### Unfair Business Practices

(Business and Professions Code Section 17200 et seq.)

121. Relator realleges and incorporates paragraphs 1 through 47 and all preceding paragraphs of this Complaint as if fully set forth herein.

122. Beginning at an exact date that is unknown to plaintiffs, but within four years prior to the filing of this Complaint, defendants engaged in unfair competition as defined by Business and Professions Code section 17200, by engaging in the following unlawful, unfair or fraudulent acts or practices. Defendants violated the California False Claims Act, Government Code sections 12650 et seq., by the acts and practices set forth in paragraphs 1 through 47 of this First Amended Complaint;

///

///

## COUNT XX

Unfair Business Practices

(Business and Professions Code Section 17500 et seq.)

123. Relator realleges and incorporates paragraphs 1 through 47 and all preceding paragraphs of this Complaint as if fully set forth herein.

124. Defendants' desire to suppress evidence of illegal billing and other misconduct was extended into misrepresentation made to private donors and government agencies as well during and prior to 2004 in violation of California Business & Professions Code § 17500, et seq., and California Civil Code § 1760, et seq. (California Consumer Legal Remedies Act), which prohibit this type of deception. Moreover, Defendants had already agreed not to engage in certain violations of public policy designed to protect taxpayers from fraud and abuse.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff/Relator prays for judgment against Defendants as follows:

A.    On Count I (Submission of False Claims), an order holding each of the Defendants liable for treble the single damages they caused, the amount of which is to be established at trial, penalties of $10,000 for each false claim, the number of which is to be established at trial, plus such other relief as this Court deems just and appropriate;

B.    On Count II (Use of False Statements or Records), an order holding each of the Defendants liable for treble the single damages they caused, the amount of which is to be established at trial, penalties of $10,000 for each false statement or record, the number of which is to be established at trial, plus such other relief as this Court deems just and appropriate;

C.    On Count III (Conspiracy to Get False Claims Paid), an order holding each of the Defendants liable for treble the single damages they caused, the amount of which is to be established at trial, penalties of $10,000 for each false statement or claim, the number of which is to be established at trial, plus such other relief as this Court deems just and appropriate;

D.    On Count IV (Reverse False Claims), an order holding each of the Defendants liable for treble the single damages they caused, the amount of which is to be established at trial, penalties of $10,000 for each false statement or claim, the number of which is to be established at trial, plus such other relief as this Court deems just and appropriate.

E.    On Count V (Conspiracy to defraud the Government with respect to claims in Violation of 18 USC Section 286) an order holding each of the Defendants liable for treble the single damages they caused, the amount of which is to be established at trial, penalties of $10,000 for each false statement or record, the number of which is to be established at trial, Any applicable fines pursuant to Title 18, plus such other relief as this Court deems just and appropriate;

F.   On Count VI (False, fictitious or fraudulent claims in Violation of 18 USC Section 287) an order holding each of the Defendants liable for treble the single damages they caused, the amount of which is to be established at trial, penalties of $10,000 for each false statement or record, the number of which is to be established at trial, Any applicable fines pursuant to Title 18, plus such other relief as this Court deems just and appropriate;

G.   On Count VII (Conspiracy to commit offense or to defraud United States in Violation of 18 USC Section 371) an order holding each of the Defendants liable for treble the single damages they caused, the amount of which is to be established at trial, penalties of $10,000 for each false statement or record, the number of which is to be established at trial, Any applicable fines pursuant to Title 18, plus such other relief as this Court deems just and appropriate;

H.   On Count VIII (Theft or embezzlement in connection with health care in Violation of 18 USC Section 669) an order holding each of the Defendants liable for treble the single damages they caused, the amount of which is to be established at trial, penalties of $10,000 for each false statement or record, the number of which is to be established at trial, Any applicable fines pursuant to Title 18, plus such other relief as this Court deems just and appropriate;

I.   On Count IX (Major fraud against the United States in Violation of 18 USC Section 1031) an order holding each of the Defendants liable for treble the single damages they caused, the amount of which is to be established at trial, penalties of $10,000 for each false statement or

record, the number of which is to be established at trial, Any applicable fines pursuant to Title 18, plus such other relief as this Court deems just and appropriate;

J.      On Count X (False statements relating to health care matters in Violation of 18 USC Section 1035) an order holding each of the Defendants liable for treble the single damages they caused, the amount of which is to be established at trial, penalties of $10,000 for each false statement or record, the number of which is to be established at trial, Any applicable fines pursuant to Title 18, plus such other relief as this Court deems just and appropriate;

K.      On Count XI (Submission of False Claims in Violation of California Government Code Section 12651(a)(1)), an order holding each of the Defendants liable for treble the single damages they caused, the amount of which is to be established at trial, penalties of $10,000 for each false claim, the number of which is to be established at trial, plus such other relief as this Court deems just and appropriate;

L.      On Count XII (Use of False Statements or Records in Violation of California Government Code Section 12651(a)(2)), an order holding each of the Defendants liable for treble the single damages they caused, the amount of which is to be established at trial, penalties of $10,000 for each false statement or record, the number of which is to be established at trial, plus such other relief as this Court deems just and appropriate;

M.      On Count XIII (Inadvertent Submission of False Claims in Violation of California Government Code Section 12651(a)(8)), an order

1    holding each of the Defendants liable for treble the single damages they

2    caused, the amount of which is to be established at trial, penalties of

3    $10,000 for each false statement or claim, the number of which is to be

4    established at trial, plus such other relief as this Court deems just and

5    appropriate;

6

7    N.    On Count XIV (Conspiracy to Get False Claims Paid in Violation

8    of California Government Code Section 12651(a)(3)), an order holding

9    each of the Defendants liable for treble the single damages they caused,

10    the amount of which is to be established at trial, penalties of $10,000 for

11    each false statement or claim, the number of which is to be established at

12    trial, plus such other relief as this Court deems just and appropriate.

13

14    O.    On Count XV (Submission of False Claims in Violation of Penal

15    Code § 550(a)(6)/Insurance Code § 1871.7), an order holding each of the

16    Defendants liable for treble the single damages they caused, the amount

17    of which is to be established at trial, penalties of $10,000 for each false

18    statement or record, the number of which is to be established at trial, plus

19    such other relief as this Court deems just and appropriate;

20

21    P.    On Count XVI (Use of False Statements or Records in Violation of

22    California Penal Code §§ 550(a)(5), 550(b)(1)-(2)/Insurance Code §

23    1871.7(b)), an order holding each of the Defendants liable for treble the

24    single damages they caused, the amount of which is to be established at

25    trial, penalties of $10,000 for each false statement or claim, the number of

26    which is to be established at trial, plus such other relief as this Court

27    deems just and appropriate;

28

Q.     On Count XVII (Concealing Over-billing in Violation of Penal Code Section 550(b)(3)/Insurance Code § 1871.7(b)), an order holding each of the Defendants liable for treble the single damages they caused, the amount of which is to be established at trial, penalties of $10,000 for each false statement or claim, the number of which is to be established at trial, plus such other relief as this Court deems just and appropriate;

R.     On Count XVIII (Unjust Enrichment) disgorgement of unjustly obtained funds, plus such other relief as this Court deems just and appropriate;

S.     On Count XIX (Business and Professions Code Section 17200 et seq.)

1.     Pursuant to Business and Professions Code section 17206, each Defendant be assessed a civil penalty of $2,500 for each violation of Business and Professions Code section 17200, in an amount of not less than $1,000,000.00;

2.     That pursuant to Business and Professions Code section 17203, Defendants, their successors, agents, representatives, employees, and all other persons who act under, by, through, or on behalf of any of them, or any of them, be permanently restrained and enjoined from performing or proposing to perform any of the acts of unfair competition in the State of California;

3.     That Defendants be ordered to make full restitution for acts of unfair competition as determined by the court;

1  T.    On Count XX (Business and Professions Code Section 17500 et

2  seq.)

3

4  1.    Plaintiff requests pursuant to Business and Professions Code §§

5  17082 treble damages;

6

7  2.    That pursuant to Business and Professions Code section 17203,

8  Defendants, their successors, agents, representatives, employees, and all

9  other persons who act under, by, through, or on behalf of any of them, or

10 any of them, be permanently restrained and enjoined from performing or

11 proposing to perform any of the acts of unfair competition in the State of

12 California;

13

14 U.    That Qui Tam Plaintiff/Relator be awarded all costs of this action,

15 including attorneys' fees; and costs;

16

17 V.    That the United States and Qui Tam Plaintiff/Relator receive such

18 other relief as the Court deems just and proper.

19

20 DATED:    March 23, 2006                    SCHULER & BROWN

21

22                                   By:_____
                                          Jack M. Schuler
23                                        Sam D. Ekizian
                                          Attorneys for Plaintiffs, Qui
24                                        Tam Plaintiff, On Behalf of
                                          Himself and the United
25                                        States

26

27

28

# SCHULER & BROWN

ATTORNEYS AT LAW

RIVERSIDE/SAN BERNARDINO
COUNTIES

4072 CHESTNUT STREET
RIVERSIDE, CA 92501
(951) 778-0616

LOS ANGELES COUNTY
AIRPORT CENTER BUILDING
7100 HAYVENHURST AVENUE, SUITE 310
VAN NUYS, CA 91406
TELEPHONE: (818) 756-0999
FAX (818) 756-0998
SchulerBrownLaw@aol.com

VENTURA/SANTA BARBARA
COUNTIES

129 SIMI AVENUE
OXNARD, CA 93035
(805) 985-8951

November 18, 2005

Alberto R. Gonzales, Attorney General
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

Consuelo S. Woodhead, U.S. Attorney
United States Attorney's Office
Central District of California
Criminal Division
312 N. Spring Street
Los Angeles, CA 90012

Daniel R. Levinson, Inspector General
Health and Human Services Office
of Inspector General HHS-OIG
Department of HHS
330 Independence Avenue, SW
Washington, D.C. 20201

J. Stephen Tidwell, Assistant Director
FBI-Los Angeles
11000 Wilshire Blvd., Suite 1700
Los Angeles, CA 90024

Michael B. Enzi, United States Senator
Chairman, Senate Health, Education, Labor
and Pensions Committee
379 Russell Senate Office Building
Washington, D.C. 20510

Albert H. Mackenzie
Deputy District Attorney
Fraud Interdiction Program
Suite 1500
201 N. Figueroa Street
Los Angeles, CA 90012

Gentlepersons:

We represent P. Victor Gonzalez who was employed as the Vice President of Finance & Administration with Planned Parenthood of Los Angeles (PPLA) between December 9, 2002 and March 9, 2004. His job duties required him to take initiative to ensure compliance with all financial rules and regulations governing the financial activities of the Defendant. On behalf of Mr. Gonzalez, and pursuant to his request, the following information we have received from him is provided to you.

In the months preceding the termination of Mr. Gonzalez's employment with PPLA, he had raised various serious financial concerns directly related to conduct violative of Federal and State statutory schemes. These concerns about the illegal accounting, billing, and donations practices of Planned Parenthood were conveyed via writing, e-mails and orally to various Planned Parenthood personnel. The written concerns related directly to the qualifications of

EXHIBIT

November 18, 2005
Page 2

Planned Parenthood to remain qualified as a health care provider and to receive continued funding from governmental and other sources.

A review of these problems had been undertaken by Planned Parenthood, its affiliates, a number of consultants, and internal reviews conducted by Planned Parenthood employees and Board members. Mr. Gonzalez had led the effort in identifying and enumerating these considerable problems and illicit activities, locating consultants, looking for viable solutions, presenting these solutions to all necessary parties, and procuring the employees to formulate the solutions.

In 1992, Section 340B of the Public Health Service Act was enacted. Section 340B requires drug manufacturers to provide outpatient drugs to eligible health care centers, clinics, and hospitals (termed "covered entities") at a reduced price. The 340B price is a "ceiling price", meaning it is the highest price the covered entity would have to pay for select outpatient and over-the-counter drugs and minimum savings the manufacturer must provide. The entities, including Planned Parenthood, which are eligible to receive federally discounted drugs are subject to various state and federal regulatory schemes dictating their ability to dispense and seek reimbursement for these drugs. California and Federal law provided payment for drugs obtained under Section 340B be based on acquisition cost. As further detailed below, Planned Parenthood violated these regulations and vastly overbilled for reimbursements.

From late 2003 through the actual date of his termination, Mr. Gonzalez had specifically complained about the following problems which jeopardized PPLA's ability to continue receiving governmental funding and monies and to maintain its continuing status as a nonprofit organization. Mr. Gonzalez complained, went on record on this matter, and, in an effort to address these serious issues, participated in numerous phone calls with both PPLA, Planned Parenthood of California, and the Sacramento based PPAC (political action committee).

PPLA had a practice of marking up medications (oral contraceptives, nuvaRing etc.) bought under the "PHS 340B" discount program. The effect of this at PPLA is overcharging the Federal Government, the State of California, and self-pay patients approximately $2,000.000.00 per year. This has been going on for a number of years, and is prevalent with the other California Planned Parenthood affiliates. As a result the overcharging exceeds $10,000,000.00 per year. During his employment with Planned Parenthood of Los Angeles, Mr. Gonzalez was requested by Planned Parenthood to perform an assessment of the impact of these overbilling practices, and the other many Planned Parenthood affiliates were asked to do likewise. The result of this assessment report for PPLA revealed approximately $2,144,313.17 in overbilling. This reflects the financial impact for only one of many Planned Parenthood affiliates in California and only for one year. A copy of the report is enclosed.

In early February 2004, the California Department of Health Services began an audit of the San Diego Planned Parenthood affiliate. The audit was limited to the San Diego Planned Parenthood affiliate. The audit found extensive and illegal markups of medications/contraceptives procured through the federal discount drug program under 38 U.S.C. Section 340B. Specifically, the audit uncovered at least $5,213,545.92 of illegal billing at

November 18, 2005
Page 3

Planned Parenthood San Diego alone. The Department of Health Services chose to ignore these findings notwithstanding the serious violations implicated.

There are many separate Planned Parenthood affiliates in California and there is probable cause to believe that most, if not all of them, also engaged in the same illegal and unscrupulous billing practices. The estimated illegal billing over six years, beginning in 1999, exceeds $180,000,000.00. This conservative figure only takes into account the illegal and unscrupulous billing practices of Defendants within the state of California.

A preliminary draft of a civil case which will soon be finalized and filed is enclosed for further factual background. Mr. Gonzalez is available to meet with you to provide further documentary evidence and information concerning these fraudulent and illegal overbilling practices.

Very truly yours,

SCHULER & BROWN

Jack M. Schuler

JMS:jpm
Enclosures

| Inventory Item# | Description | Base Unit of Measure | Base Unit Cost | YTD Utilization | YTD Expense | Revenue | Net Income |
|---|---|---|---|---|---|---|---|
|  | **CONTRACEPTIVE** |  |  |  |  |  |  |
| 10000 | Oral Contraceptive Veridate Com | Bx | $ . | 0 | $ . | - | - |
| 10128 | Oral Contraceptive Modicon | Ea | $ 1.31 | 4,087 | $ 5,353.97 | 49,044.00 | 43,690.03 |
| 10211 | Preven (Emer Contra Kit) | Pk | $ 1.85 | 2,482 | $ 4,591.70 | 47,009.08 | 42,417.38 |
| 1032B | Oral Cont Ortho Novum 135 | Ea | $ 0.61 | 6,481 | $ 3,953.41 | 77,772.00 | 73,818.59 |
| 1052BC | Oral Cont Ortho Novum 150 | Ea | $ 3.66 | 217 | $ 794.22 | 2,604.00 | 1,809.78 |
| 1052B | Oral Cont Ortho-Cyclen 28 | Ea | $ 3.74 | 15,500 | $ 57,970.00 | 186,000.00 | 128,030.00 |
| 1072B | Oral Cont Ortho Novum 777 | Ea | $ 1.57 | 21,128 | $ 33,170.96 | 253,536.00 | 220,365.04 |
| 1082B | Oral Cont Micronor | Ea | $ 2.83 | 2,652 | $ 7,505.16 | 31,824.00 | 24,318.84 |
| 10828 | Depo-Provera 150MG | VL | $ 24.16 | 6,301 | $ 152,232.16 | 294,697.77 | 142,465.61 |
| 20000 | Depo-Provera 150MG W/SRNG | SY | $ 19.75 | 2,920 | $ 57,670.00 | 136,568.40 | 78,898.40 |
| 20001 | Plan B | Ea | $ 4.50 | 15,747 | $ 70,861.50 | 328,482.42 | 257,620.92 |
| 20002 | Lunelle | VL | $ 14.93 | 0 | $ . | - | - |
| 20003 | Ortho Evra | Ea | $ 3.27 | 5,745 | $ 18,768.92 | 63,941.85 | 45,172.94 |
| 20004 | Nuva-Ring | Ea | $ 3.00 | 1,296 | $ 3,888.00 | 47,964.96 | 44,076.96 |
| 20005 | Demulen 1/35 | Ea | $ 6.02 | 2,088 | $ 12,565.58 | 25,056.00 | 12,490.42 |
| 20008 | Alesse-28 | Ea | $ 3.61 | 25,563 | $ 92,384.68 | 306,756.00 | 214,371.32 |
| 2001B | Loestin Fe 1/20 #913-45 | Ea | $ 10.16 | 9,060 | $ 92,049.60 | 108,720.00 | 16,670.40 |
| 2002B | Diaphragms-All-Flex 85 | Ea | $ 18.50 | 4 | $ 74.00 | 52.00 | (22.00) |
| 2008B | Tri-Levlen #43303 | Ea | $ 1.89 | 7,908 | $ 14,946.12 | 94,896.00 | 79,949.88 |
| 20128 | Diaphragms-All-Flex 160 | Ea | $ 15.25 | 2 | $ 30.50 | 26.00 | (4.50) |
| 20160 | Diaphragms-All-Flex 165 | Ea | $ 18.50 | 24 | $ 444.00 | 312.00 | (132.00) |
| 20165 | Diaphragms-All-Flex 170 | Ea | $ 18.50 | 29 | $ 536.50 | 377.00 | (159.50) |
| 20170 | Diaphragms-All-Flex 175 | Ea | $ 18.50 | 36 | $ 666.00 | 468.00 | (198.00) |
| 20175 | Diaphragms-All-Flex 180 | Ea | $ 18.50 | 8 | $ 148.00 | 104.00 | (44.00) |
| 20180 | Diaphragms-All-Flex 185 | Ea | $ 6.50 | 1 | $ 6.50 | 13.00 | 6.50 |
| 20185 | Diaphragms-All-Flex 190 | Ea | $ 18.50 | 1 | $ 18.50 | 13.00 | (5.50) |
| 20190 | Diaphragms-All-Flex 195 | Ea | $ 18.50 | 2 | $ 37.00 | 26.00 | (11.00) |
| 20195 | Levlen #41128 | Ea | $ 1.07 | 17,901 | $ 19,154.07 | 214,812.00 | 195,657.93 |
| 2022B | Diaphragms-Koromex 250 | Ea | $ 15.25 | 2 | $ 30.50 | 26.00 | (4.50) |
| 20255 | Diaphragms-Koromex 255 | Ea | $ 15.25 | 5 | $ 76.25 | 65.00 | (11.25) |
| 20260 | Diaphragms-Koromex 260 | Ea | $ 15.25 | 7 | $ 106.75 | 91.00 | (15.75) |
| 20265 | Diaphragms-Koromex 265 | Ea | $ 15.25 | 5 | $ 76.25 | 65.00 | (11.25) |
| 20270 | Diaphragms-Koromex 270 | Ea | $ 15.25 | 10 | $ 152.50 | 130.00 | (22.50) |
| 20275 | Diaphragms-Koromex 275 | Ea | $ 15.25 | 3 | $ 45.75 | 39.00 | (6.75) |
| 20280 | Diaphragms-Koromex 280 | Ea | $ 18.50 | 1 | $ 18.50 | 13.00 | (5.50) |
| 20285 | Diaphragms-Koromex 285 | Ea | $ 18.50 | 1 | $ 18.50 | 13.00 | (5.50) |
| 20290 | Diaphragms-Koromex 290 | Ea | $ 18.50 | 3 | $ 55.50 | 39.00 | (16.50) |
| 20295 | Diaphragms-Koromex 295 | Ea | $ 15.25 | 1 | $ 15.25 | 13.00 | (2.25) |
| 2042B | Ortho Tri-Cyclen Lo | Ea | $ 2.25 | 23,664 | $ 53,244.00 | 283,968.00 | 230,724.00 |
| 25000 | Cervical Cap-Filling Set | Ea | $ 50.00 | 10 | $ 500.00 | 130.00 | (370.00) |
| 25022 | Cervical Cap 22MM | Ea | $ 46.00 | 1 | $ 46.00 | 13.00 | (33.00) |