JS-6;O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8818 AHM (FMOx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | P. VICTOR GONZALEZ, *et al.* v. PLANNED PARENTHOOD OF LOS ANGELES, *et al.* | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys **NOT** Present for Plaintiffs:　　　Attorneys **NOT** Present for Defendants:

**Proceedings:**　　　IN CHAMBERS (No Proceedings Held)

　　　Plaintiff P. Victor Gonzalez brings this *qui tam* action against Defendants Planned Parenthood, Mary Jane Wagle, Martha Swiller, and Kathy Kneer for violation of the federal False Claims Act ("FCA"). Before the Court is Defendants' motion to dismiss and strike Plaintiff's third amended complaint ("TAC").[1] The Court finds that Plaintiff has failed to allege falsity, a required element of the FCA, and therefore GRANTS the motion to dismiss the TAC.[2] The motion to strike the state claims previously dismissed with prejudice is also GRANTED.[3] Finding that any further amendment of the complaint would be futile -- Plaintiff has now filed four complaints -- the Court dismisses this action with prejudice.

**I.　　FACTS**

　　　The key facts as alleged in the TAC are as follows. Plaintiff was the Chief Financial Officer of Planned Parenthood of Los Angeles ("PPLA") from December 2002 to March 2004. PPLA and several other Planned Parenthood regional affiliates operating in California are the Defendants. For purposes of clarity, the Court will refer to all these

---

[1] The TAC names nine regional Planned Parenthood entities in California as well as Planned Parenthood Affiliates of California, an umbrella organization based in Sacramento. One of the Defendants, Golden Gate Community Health, is no longer affiliated with Planned Parenthood and has been severed from this action as a result of its bankruptcy. (Dkt. 116.)

[2] Dkt. 125.

[3] Dkt. 125.

| CV-90 (06/04) | **CIVIL MINUTES - GENERAL** | Page 1 of 15 |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8818 AHM (FMOx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | P. VICTOR GONZALEZ, *et al.* v. PLANNED PARENTHOOD OF LOS ANGELES, *et al.* | | |

affiliates as "Planned Parenthood," since several are accused of conspiring with each other and all are accused of independently engaging in the same conduct.

 During the relevant time period, Planned Parenthood was a participant in the Family Planning, Access, Care and Treatment program ("FPACT") and Medi-Cal programs that reimbursed Planned Parenthood for contraceptives it provided to low-income individuals. (TAC ¶¶ 1, 22-23.) Medi-Cal is California's Medicaid program that provides health services for low income individuals and is jointly funded by the federal and state governments. (TAC ¶ 27.) FPACT is a special program within Medi-Cal that provides family planning drugs and services to individuals under the poverty level. It has been jointly funded by the federal and state governments since 1999. (TAC ¶¶ 28, 45.) Prior to late 1999, FPACT was funded 100% by the state of California. (TAC ¶ 44.)

 Each of the Planned Parenthood Defendants signed a Provider Agreement with FPACT, agreeing to "comply with all federal laws and regulations governing and regulating Providers." (TAC ¶ 36, Exh. 1(b), "Provider Agreement," ¶ 2.) The Planned Parenthood affiliates also agreed to "comply with all of the billing and claims requirements set forth in the Welfare and Institutions Code." The Provider Agreement went on to state, "Refer to the Family PACT *Policy, Procedures, and Billing Instruction* manual for diagnosis code and method indicators that are distinctive to the Family PACT program." (TAC ¶¶ 35-36, Exh. 1(b), "Provider Agreement," ¶ 20.)

 Planned Parenthood acquires contraceptives from manufacturers at a significant discount. (TAC ¶ 26.) Plaintiff alleges that federal and state regulations,[4] as well as the FPACT manual, required Planned Parenthood to bill FPACT and Medi-Cal for reimbursement of contraceptives "at cost" -- not at the "usual and customary rates" charged to the general public. (TAC ¶¶ 33-34, 37, Exh. 1(a).) Nonetheless, from 1997-2004, Planned Parenthood submitted reimbursement claims based on "usual and customary rates." (TAC ¶ 52.) Plaintiff alleges Defendants defrauded the federal government by overbilling California's FPACT and Medi-Cal programs during that time period. (TAC ¶ 4.)

---

 [4] The specific regulations cited by Plaintiff are 22 Cal. Code of Reg. ("CCR") Section 51509.1(c)(3), 58 Fed. Reg. 27293, 58 Fed. Reg. 34058, 58 Fed. Reg. 68922, and 59 Fed. Reg. 25112.

JS-6;O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8818 AHM (FMOx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | P. VICTOR GONZALEZ, *et al.* v. PLANNED PARENTHOOD OF LOS ANGELES, *et al.* | | |

    On May 5, 1997, the California Department of Health Services started exchanging a series of letters with Kathy Kneer, then the Executive Director of the Planned Parenthood Affiliates of California, informing her that claims made to FPACT and Medi-Cal for reimbursement were to be billed "at cost." (TAC ¶¶ 56, 72, 85, 91, 97, 102, 107, 112, 117, 122, Exhs. 2(a)-2(b).) Years later, in 2004, the California Department of Health Services ("DHS") notified several Planned Parenthood offices in California that it would conduct an audit of their overbilling practices. (TAC ¶ 57.) Defendant Wagle, the CEO of PPLA, asked Plaintiff to perform an assessment of the impact of Defendants' overbilling practices. The assessment revealed that PPLA had profited $2,144,313.17 from the practice in just one year. (*Id.*) In November 2004, the DHS issued a report of the audit and found that PPLA had failed to comply with the billing practices outlined in the FPACT manual. (TAC Exh. 6.)

    Based on the 1997 correspondence and the DHS audit,[5] Plaintiff alleges that all Defendant entities of Planned Parenthood were put on notice as of 1997 that their billing practices were not in compliance with the law. (TAC ¶¶ 56-57.) Despite this knowledge, Defendants continued to submit claims at the "usual and customary rate" until at least the end of 2004. (TAC ¶¶ 60, 80, 87, 93, 99, 104, 109, 114, 119, 128.) Plaintiff admits that Defendants did not attempt to hide this practice but "openly acknowledged engaging in this practice in order, as they claimed, to subsidize other services provided by them for which they believed they were 'under-reimbursed.'" (TAC ¶ 42, Exh. 3(a).)

## II.    PROCEDURAL HISTORY

    Plaintiff initiated this action on December 19, 2005. (Dkt. 1.) Nearly two years later, the United States filed a notice of non-intervention. (Dkt. 26.) Subsequently, Plaintiff filed a First Amended Complaint alleging claims under the FCA, the California False Claims Act, and other state laws. The Court dismissed the federal and California FCA claims for lack of subject matter jurisdiction, finding that the facts alleged were

---

    [5] At the hearing on the instant motion, Plaintiff's counsel noted that various federal and state billing directives, regulations, and statutes, which he did not specify, also put Defendants on notice that they were not in compliance. (TAC ¶ 41.)

**JS-6**;O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8818 AHM (FMOx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | P. VICTOR GONZALEZ, *et al.* v. PLANNED PARENTHOOD OF LOS ANGELES, *et al.* | | |

previously disclosed to the public and that Plaintiff was not an original source of the allegations. (Dkt. 43.) The other state claims were dismissed for lack of standing.

The Ninth Circuit reversed this Court's dismissal of the federal and state FCA claims, holding that Gonzalez qualified as an original source. *Gonzalez v. Planned Parenthood of Los Angeles*, 392 F.App'x. 524, 528 (9th Cir. 2010). On remand, Defendants moved for judgment on the pleadings. This Court dismissed the California claims with prejudice for being time-barred and dismissed the federal FCA claims with leave to amend on the grounds that they were not pled with the specificity required by Fed. R. Civ. P. 9(b). The Court also found that (1) the ambiguity of the words "at cost" did not necessarily preclude FCA liability and (2) the government's knowledge of Defendants' billing practices did not necessarily preclude a finding of falsity or scienter. (Dkt. 104.)

Plaintiff filed a Second Amended Complaint but stipulated to withdrawing it after Defendants moved again for a judgment on the pleadings. (Dkt. 120.) On August 25, 2011, Plaintiff filed the TAC, alleging three claims under the federal FCA for (1) Submission of False Claims (31 U.S.C. § 3729(a)(1)), (2) Use of False Statements or Records or Statements (31 U.S.C. § 3729(a)(2)), and (3) Conspiracy to Get False Claims Paid (31 U.S.C. § 3729(a)(3)). (Dkt. 122.) Plaintiff also alleged the four previously dismissed state FCA claims, clarifying that the claims were being "[r]etained by [r]elator for purposes of appeal."

## III. LEGAL STANDARD

### A. Motion to Dismiss for Failure to State a Claim

A complaint may be dismissed for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A]

JS-6;O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8818 AHM (FMOx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | P. VICTOR GONZALEZ, *et al.* v. PLANNED PARENTHOOD OF LOS ANGELES, *et al.* | | |

plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal quotation marks and ellipsis omitted).

The plausibility standard articulated in *Twombly* and *Iqbal* requires that a complaint plead facts demonstrating "more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S.Ct. at 1949 (internal quotation marks and citation omitted). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. *Iqbal*, 129 S.Ct. at 1950 (internal citation, alteration, and quotation marks omitted); *see Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the pleader to relief.") (citing *Iqbal*, 129 S.Ct. at 1949).

To determine whether a complaint states a claim sufficient to withstand dismissal, a court considers the contents of the complaint and its attached exhibits, documents incorporated into the complaint by reference, and matters properly subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). The court must accept as true all factual allegations contained in the complaint. That principle, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1950. A complaint filed *pro se*, however, is "to be liberally construed," and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Where a motion to dismiss is granted, a district court should provide leave to

JS-6;O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8818 AHM (FMOx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | P. VICTOR GONZALEZ, *et al.* v. PLANNED PARENTHOOD OF LOS ANGELES, *et al.* | | |

amend unless it is clear that the complaint could not be saved by any amendment. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted).

### B. Motion to Strike

Pursuant to Federal Rule of Civil Procedure 12(f), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Immaterial" matters are those which have no essential or important relationship to the claim for relief; "impertinent" matters are statements that do not pertain and are not necessary to the issues in question. *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *overruled on other grounds*, 510 U.S. 517 (1994). "Motions to strike on the grounds of insufficiency, immateriality, irrelevancy, and redundancy are not favored . . . and will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Bianchi v. State Farm Fire & Cas. Co.*, 120 F. Supp. 2d 837, 841 (N.D.Cal. 2000) (quoting *Dah Chong Hong, LTD. v. Silk Greenhouse, Inc.*, 719 F. Supp. 1072 (M.D. Fla. 1989)).

### IV. DISCUSSION

Defendants argue that Plaintiff has failed to state a claim under the FCA because the TAC does not adequately plead "falsity," and thus the entire action must be dismissed. Even if Plaintiff has pled falsity, Defendants argue that (1) Plaintiff has again failed to satisfy the Rule 9(b) standard of pleading against several Defendants and (b) that Plaintiff's claims are limited to those based on injury to FPACT from 1999 to 2004. Because the Court agrees that Plaintiff has not adequately pled "falsity," the Court declines to consider these other arguments.

JS-6;O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8818 AHM (FMOx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | P. VICTOR GONZALEZ, *et al.* v. PLANNED PARENTHOOD OF LOS ANGELES, *et al.* | | |

**A.   Plaintiff Has Failed to Plead Falsity under the Federal FCA**

The FCA prohibits a party from knowingly presenting to the federal government a false or fraudulent claim for payment. *United States ex rel. Hopper v. Anton,* 91 F.3d 1261, 1266 (9th Cir. 1996); *see also* 31 U.S.C. § 3729.[6]  "The archetypal *qui tam* FCA action is filed by an insider at a private company who discovers his employer has overcharged under a government contract." *Hopper*, 91. F.3d at 1266. Where the basis of the FCA claim is not that the claim for payment itself was explicitly false, a party may still be liable under a theory of "false certification." *Hendow v. University of Phoenix*, 461 F.3d 1166, 1171 (9th Cir. 2006).  Under a "false certification" theory, a person who submits a claim for payment that in itself contains no explicit inaccuracies or misrepresentations may still be liable under the FCA if that person falsely certified that he was in compliance with a government regulation that was a material condition to receiving government payment. *Id.* The phrase "false certification" has no "talismanic significance" but is simply another way of describing a false statement made to the government. *Id.* at 1172.

Defendants argue that because Plaintiff does not allege that Defendants submitted claims that were "factually false" (e.g., that Defendants billed for services that were not actually provided), Plaintiff must proceed on a theory of "false certification."  (MTD 9.)  Plaintiff argues that he need not resort to a false certification theory because this *is* an "archetypal *qui tam* False Claims action" alleging that "the claim for payment itself is literally false or fraudulent." (Opp. 6.)   The Court finds that under either theory, Plaintiff has failed to plead falsity.

---

[6] When Plaintiff initiated this action, the False Claims Act provided, in relevant part, "(a) Any person who (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid . . . is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person ." 31 U.S.C. § 3729(a) (1994).

JS-6;O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8818 AHM (FMOx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | P. VICTOR GONZALEZ, *et al.* v. PLANNED PARENTHOOD OF LOS ANGELES, *et al.* | | |

    1.    <u>False or Fraudulent Claim for Payment</u>

    Plaintiff describes this action as merely one where "a private party overcharges the government, rendering the claim for payment itself false or fraudulent." (Opp. 5.) If that is the crux of his legal theory, it is deficient. No case creates or imposes FCA liability merely where one overcharges the government -- the overcharging must be committed in conjunction with a false statement that is a lie. *See Hagood v. Sonoma Cnty. Water Agency*, 81 F.3d 1465, 1478 (9th Cir. 1996) (citations omitted) ("[T]he statutory phrase 'known to be false' . . . means a lie.")*; accord Hopper*, 91 F.3d at 1267 ("For a certified statement to be "false" under the Act, it must be an "intentional, palpable lie.").

    To the extent that Plaintiff's theory is that Defendants' claims for reimbursement contained factually false statements, Plaintiff has failed to specifically identify any such statement. Plaintiff does not allege, for example, that Defendants misrepresented their "usual and customary" rates as "actual acquisition" costs. At the hearing, Plaintiff's counsel clarified that Plaintiff's primary allegation of falsity is that Defendants "hid" their billing practices: that in 1997, Planned Parenthood was told it was not in compliance with FPACT billing policies; that in spite of this, Planned Parenthood continued to violate those policies; and that it was not until the 2004 audit that Planned Parenthood openly argued that it should be permitted to bill at usual and customary rates. While Plaintiff does allege in the TAC that certain Defendants conspired with each other "to shield the scheme from detection and correction by government authorities." (TAC ¶ 70), Plaintiff fails to support this conclusory allegation with a single factual allegation specifying how any Defendant tried to hide its billing practices. In fact, elsewhere in the TAC, Plaintiff alleges the opposite -- that "[a]t no time did any of the Defendants, either in response to the correspondence advising Planned Parenthood of its obligation to seek reimbursement 'at cost,' or in response to the state audit of PPH, . . . state that [Defendants] . . . (i) deny the uniform practice of affiliates marking up birth control drugs and devices for reimbursement from the state government (and in turn, the federal government) or (ii) profess that they did not understand to which claims the at-cost billing rules and over-billing allegations applied." (TAC ¶ 124.) Plaintiff then cites multiple examples of Defendants admitting in reports and statements to government officials that they had been submitting claims for reimbursement at their "usual and customary" rate. (TAC ¶¶ 124-128.) For example, in 2004, Defendant Wagle wrote an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8818 AHM (FMOx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | P. VICTOR GONZALEZ, *et al.* v. PLANNED PARENTHOOD OF LOS ANGELES, *et al.* | | |

email on behalf of Planned Parenthood entities saying, "California Planned Parenthood Affiliates have been charging . . . based on a Usual and Customary fixed rate . . . [which] passes on some of the reduced cost . . . but not all and it clearly marks up the medicines to the FPACT defaulted bill rate. This has been the practice of all PP affiliates since the FPACT program was inaugurated in 1997 . . . ." (TAC ¶ 126.)

Defendants' consistent candor and truthfulness puts this case at odds with *United States v. Halper*, 490 U.S. 435 (1989), the "archetypal" FCA case cited by Plaintiff. In that case, the defendant was found to have "mischaracterized the medical service performed by New City [Medical Laboratories], demanding reimbursement at the rate of $12 per claim when the actual service rendered entitled New City to only $3 per claim. Duped by these misrepresentations, Blue Cross overpaid New City a total of $585; Blue Cross passed these overcharges along to the Federal Government." *Id.* at 437. Similarly, in *Oliver v. Parsons Co.*, 195 F.3d 457, 461 (9th Cir. 1999), the plaintiff alleged that defendants had intentionally represented certain labor costs as "other direct costs" instead of "direct labor costs" in order to increase the rate it could bill the government.

Although Defendants have previously argued that the phrase "at cost" may be legally interpreted to mean "usual and customary rates," Plaintiff does not allege that Defendants ever made a factual representation that the amounts they were billing for were at acquisition cost. Indeed, unlike in *Halper* and *Parsons*, Plaintiff does not even allege that any such factual mischaracterizations or misrepresentations were made by Defendants. The facts in the TAC merely amount to allegations that Defendants knowingly violated FPACT and Medi-Cal billing policies. They do not support a plausible inference that Defendants *misrepresented* what they were billing or claimed that the amounts requested were the amounts Defendants paid for the contraceptives. Thus, to the extent that Plaintiff is proceeding on a theory of factual falsity, Plaintiff has failed to state a claim.

    2. <u>Falsity Arising from Certification of Compliance with the Law</u>

It appears, however, that notwithstanding Plaintiff's statement that this is an "archetypal" FCA action based on literal falsity (Opp. 6), Plaintiff is pursuing a different theory of "falsity" -- that the "falsity" consists of Defendants's failure to comply with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8818 AHM (FMOx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | P. VICTOR GONZALEZ, *et al.* v. PLANNED PARENTHOOD OF LOS ANGELES, *et al.* | | |

FPACT and Medi-Cal's alleged requirement that Defendants seek reimbursement at the actual acquisition cost. Plaintiff argues that he has properly pled falsity by virtue of alleging that Defendants violated those billing laws -- "Defendants were obligated to comply with the law governing billing whether or not they certified that they would comply." (Opp. 6.) Defendants argue that this theory fails to state an FCA claim because Plaintiff must explicitly allege that Defendants falsely certified or stated that they were in compliance with those laws. Defendants are correct.

The Ninth Circuit has held, "Violations of laws, rules, or regulations alone do not create a cause of action under the FCA. It is the false certification of compliance which creates liability when certification is a prerequisite to obtaining a government benefit." *Hopper*, 91 F.3d at 1266. Contrary to Plaintiff's contention, the absence of an allegation that a false certification was submitted is a "fatal defect" to an FCA claim. *See id.* at 1267.

To state a claim for false certification, a plaintiff must show: "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *Hendow*, 461 F.3d at 1174. False certifications may be express or implied. *Ebeid v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). "Express certification simply means that the entity seeking payment certifies compliance with a law, rule or regulation as part of the process through which the claim for payment is submitted. Implied false certification occurs when an entity has previously undertaken to expressly comply with a law, rule, or regulation, and that obligation is implicated by submitting a claim for payment even though a certification of compliance is not required in the process of submitting the claim." *Id*.

Plaintiff does not allege that each time Defendants submitted a claim for reimbursement, they stated that they were complying with billing laws. Instead, Plaintiff merely alleges that Defendants agreed to comply with those billing laws when they signed provider agreements with FPACT. (TAC ¶ 36.) Thus, Plaintiff must proceed on a theory of implied false certification.

To state a claim for implied false certification, a complaint "must plead with particularity allegations that provide a reasonable basis to infer that (1) the defendant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8818 AHM (FMOx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | P. VICTOR GONZALEZ, *et al.* v. PLANNED PARENTHOOD OF LOS ANGELES, *et al.* | | |

*explicitly* undertook to comply with a law, rule or regulation that is implicated in submitting a claim for payment and that (2) claims were submitted (3) even though the defendant was not in compliance with that law, rule or regulation." *Id.* at 998 (emphasis added).

The FPACT Provider Agreement, attached as Exhibit 1(b) to the TAC, does not explicitly state that Defendants are required to bill at acquisition costs. The Agreement does state, however, "Provider. . . agrees to comply with all federal laws and regulations governing and regulating Providers." (TAC, Exh. 1(b) ¶ 2.) Although the Ninth Circuit has not addressed the issue, the Tenth Circuit has held that such "general sweeping language" does not constitute a certification of compliance for the purposes of the FCA. *Conner v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1219 (10th Cir. 2008) "[B]y arguing that the certification's language is adequate to create an express false certification claim, [plaintiff] fundamentally contends that *any* failure by [defendant] to comply with *any* underlying Medicare statute or regulation during the provision of *any* Medicare-reimbursable service renders this certification false, and the resulting payments fraudulent." *Id.* This Court follows the lead of the Tenth Circuit in finding that such general language cannot constitute a certification of compliance.

Paragraph 20 of the FPACT Provider Agreement also states: "Provider agrees that it shall comply with all of the billing and claims requirements set forth in the Welfare and Institutions Code." Several sentences later, that paragraph goes on to state, "Refer to the Family Pact *Policy, Procedures, and Billing Instruction* manual for diagnosis code and method indicators that are distinctive to the Family PACT program." Plaintiff cites to no provision in the Welfare and Institutions Code that requires Defendants to bill "at cost."[7] (TAC, Exh. 1(b), at 2.) Instead, the only provision Plaintiff cites that uses the words "at cost" is located not in the Provider Agreement but in the entirely separate FPACT manual, which states, "Family PACT requires that drugs and supplies dispensed by the

---

[7] In the TAC, Plaintiff does mention 22 C.C.R. 51509.1(c)(3), which states, "Reimbursement for take-home drugs dispensed by clinics that have obtained permits pursuant to Business and Professions Code Section 4063 et seq. shall not exceed the amounts payable for drug ingredient cost under Section 51513. No dispensing fee or markup shall be paid." That regulation, however, is not part of the Welfare and Institutions Code and in any event simply restricts the amount that can be reimbursed, not the amount that can be billed.

JS-6;O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8818 AHM (FMOx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | P. VICTOR GONZALEZ, *et al.* v. PLANNED PARENTHOOD OF LOS ANGELES, *et al.* | | |

Family PACT provider must be billed 'at cost.'" (TAC, Exh. 1(a), at 1.) But Plaintiff does not even allege that Defendants signed the FPACT manual. What Defendants *did* allegedly sign was the Provider Agreement, which did not require or amount to a promise to comply with every provision in the manual.

It is apparent from the facts alleged and from the correspondence attached as exhibits to the TAC that from 1997 to 2004 Defendants were engaged in a lengthy and open dispute with the government about whether they were entitled to reimbursement at acquisition costs or at their usual and customary rates. Plaintiff has successfully alleged facts to show that Defendants may not have complied with the FPACT instruction manual requirement that billing must be "at cost" -- but such a showing falls short of the FCA requirement of "a showing of knowing fraud." *Hagood*, 81 F.3d at 1478. As the district court stated in *Hopper*:

> It appears to the court that the plaintiff is operating under a fundamental misconception as to the reach and scope of the FCA. It is not the case that any breach of contract, or violation of regulations or law, or receipt of money from the government where one is not entitled to receive the money, automatically gives rise to a claim under the FCA. Plaintiff assumes that if Los Angeles Unified School District (LAUSD) has violated regulations or law governing the Individuals with Disabilities Education Act (IDEA), it is automatically subject to suit under FCA. The FCA is far narrower. It requires a false claim. Thus, some request for payment containing falsities made with scienter (i.e., with knowledge of the falsity and with intent to deceive) must exist. This does not mean that other types of violations of regulations, or contracts, or conditions set for the receipt of moneys, or of other federal laws and regulations are not remediable; it merely means that such are not remediable under the FCA or the citizen's suit provisions contained therein.

*Hopper*, 91 F.3d at 1265 (quoting the district court with approval).

Like the plaintiff in *Hopper*, here Plaintiff appears to operate under the assumption that he has stated an FCA claim merely by alleging that Defendants were not complying with FPACT and Medi-Cal billing policies. That is not correct. As shown above, to state

**JS-6**;O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8818 AHM (FMOx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | P. VICTOR GONZALEZ, *et al.* v. PLANNED PARENTHOOD OF LOS ANGELES, *et al.* | | |

an FCA claim, Plaintiff must specify a statement or claim made by Defendants that was *false*. While the TAC alleges in great detail that Defendants submitted bills at their usual and customary rates, it also alleges throughout that Defendants were open about their billing practices.[8] Thus, the Court finds that Plaintiff has failed to plead falsity under the FCA and dismisses Counts I-III.

The question remains as to whether to grant Plaintiff leave to amend. In this Court's previous order dismissing Plaintiff's First Amended Complaint, the Court noted:

> The FAC does not contain sufficient detail regarding the alleged false statements, which he claims took place from "at least 1997" through the filing of his complaint in 2008. *E.g.* FAC ¶ 70. To be sure, Plaintiff need not state each and every claim in exacting detail, but there must be something more than the mere blanket assertion that defendants submitted false claims. He must at least plead the "who, what, when, where, and how" of the alleged false claims with sufficient particularity.

(Dk. 104, "April 19 Order," at 13.)

Despite this Court's direction, Plaintiff has failed in the TAC to make any further allegations of false statements made by Defendants. Instead, Plaintiff simply added details about the number of claims Defendants made for reimbursement at a marked-up rate. That Defendants submitted *many* claims does not mean those claims were false. Because Plaintiff has failed to add sufficient detail indicating which of Defendants' claims or statements were *false* (as opposed to non-compliant or illegal), the Court concludes that the federal FCA claims cannot be saved by further amendment and dismisses them with prejudice.

---

[8] Plaintiff's counsel argued at the hearing that the Court's finding in this Order contradicts the Court's April 19 Order, in which it found that government knowledge did not preclude a finding of falsity or scienter. (Dkt . 104.) As the Court explained at the hearing, the Court's decisions are not in conflict. The Court concludes today that Plaintiff's FCA claims fail because Plaintiff has not adequately pled falsity, not because Plaintiff has alleged that the government knew about Defendants' billing practices.

**JS-6**;O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8818 AHM (FMOx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | P. VICTOR GONZALEZ, *et al.* v. PLANNED PARENTHOOD OF LOS ANGELES, *et al.* | | |

### B.     Plaintiff's State-Based FCA Claims Are Stricken

The Court previously dismissed Plaintiff's state-based FCA claims with prejudice for being time-barred.  Nonetheless, Plaintiff has re-alleged these claims solely for the purpose of preserving them for appeal.  Because those claims are "immaterial" to the remaining federal FCA claims, the Court strikes Counts IV - VII pursuant to Fed. R. Civ. P. 12(f).

/ / /

/ / /

**JS-6**;O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8818 AHM (FMOx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | P. VICTOR GONZALEZ, *et al.* v. PLANNED PARENTHOOD OF LOS ANGELES, *et al.* | | |

## V.  CONCLUSION

For the above reasons, the Court GRANTS Defendants' motion to dismiss and motion to strike.  This action is dismissed with prejudice.  Defendants shall file a proposed judgment, which will be entered accordingly.

                                                                                                                                      :

Initials of Preparer                      SMO

**JS-6**